# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

JASON RAY SELLERS, )
)
*Plaintiff*, )
) Case No. 3:26-cv-360
v. )
) Judge Atchley
TENNESSEE DEPARTMENT OF )
CORRECTION, SHAWN PHILLIPS, and ) Magistrate Judge McCook
CENTURION HEALTH GROUP, )
)
*Defendants*. )

## MEMORANDUM & ORDER

Plaintiff is a Tennessee Department of Correction ("TDOC") prisoner previously housed in the Morgan County Correctional Complex ("MCCX") who is now housed in the Trousdale Turner Correctional Complex ("TTCC"). Plaintiff filed a pro se Complaint [Doc. 2] for violation of 42 U.S.C. § 1983, alleging denials of adequate medical care during his MCCX confinement, as well as a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**, and this action will be **DISMISSED** because the Complaint [Doc. 2] fails to state a claim upon which relief may be granted under § 1983.

## I. FILING FEE

As Plaintiff cannot pay the filing fee in a lump sum, his motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**, and he is **ASSESSED** the $350.00 civil filing fee. 28 U.S.C. § 1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average

monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period before the filing of the complaint.  28 U.S.C.§ 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such income exceeds ten dollars ($10.00), until he has paid the full filing fee. 28 U.S.C. § 1915(b)(2). The Clerk is **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's facility to ensure payment of the filing fee.

This memorandum and order **SHALL** be placed in Plaintiff's institutional file and follow him if he is transferred to a different place of confinement.

## II.      COMPLAINT SCREENING

### A.      Standard

Under the Prison Litigation Reform Act (PLRA), district courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, to survive an initial PLRA review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Formulaic and conclusory recitations of the

2

elements of a claim do not state a plausible claim. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. But courts liberally construe pro se pleadings and hold them to a less stringent standard than pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B.      Complaint Allegations

Plaintiff signed his Complaint on July 27, 2026. [Doc. 2 at p. 5]. In it, he alleges that on June 28, 2025, he was incarcerated in the MCCX, where he had been treated for chronic heart disease for two years. [*Id.* at 2]. On June 28, 2025, Plaintiff became lightheaded and passed out while climbing into a top bunk. [*Id.*]. His cellmate tried to use an emergency call button to summon help, but the button was not functional. [*Id.*]. Plaintiff's cellmate also tried to get attention from prison officers, but he was unsuccessful. [*Id.*].

On the next day, June 29, Plaintiff spoke to an unknown med tech and told her what had happened, showed her his eye injury, and told her about his pain. [*Id.* at 2–3]. The med tech stated she would bring Plaintiff Tylenol and sick call forms. [*Id.*]. Plaintiff filled out a sick call form and turned it in "to the next med[] tech that came on shift." [*Id.* at 3]. On June 30, Plaintiff received medication at "med pass" but did not see medical staff. [*Id.*]. On July 1, Plaintiff again received medication and an officer told him that he would be taken to medical for a sick call, but he was not. [*Id.*]. On the same day, a med tech told Plaintiff he was on the list to see medical staff, which also did not happen. [*Id.*].

On July 2, Plaintiff told one of the med techs who had given him medication about his pain, dizziness, nausea, numbness in his left arm, and the pain in the area of his right eye. [*Id.*]. At that

point, he was given Tylenol, charged $3 for sick call, and given more sick call forms. [*Id.*]. Plaintiff states that he still did not see medical staff. [*Id.*].

On July 3, Plaintiff requested more sick call forms, but a med tech told him he could not have any more forms and did not give him anything for pain. [*Id.*]. On July 4, Plaintiff asked a med tech about seeing medical staff, but the med tech told him that this likely would not happen because it was a holiday, and that she could not do anything else for him until medical staff saw him. [*Id.*]. On July 5, Plaintiff was told he would see the doctor, but he did not. [*Id.*]. A med tech explained to Plaintiff that some officers will tell prisoners "anything" to get the prisoners "to leave them alone." [*Id.*]. Plaintiff also did not see medical staff on July 6 or 7, 2025. After Plaintiff told an officer about his pain on July 7, the officer apparently told Plaintiff he had a medical pass for Plaintiff. [*Id.*]. On July 8, Plaintiff complained to officers and a med tech "about [his] condition," but he did not see medical staff. [*Id.*]. On July 9, Plaintiff told "the Charge Nurse" about his pain and other symptoms, and she told Plaintiff that he was on the list to be seen by medical on July 10 and gave him more Tylenol. [*Id.*].

On July 10, Plaintiff received a medical pass stating he would be seen for his heart condition, rather than the sick calls he had filed about his fall injuries. [*Id.*]. Plaintiff saw a doctor who told Plaintiff his heart was not working properly, and that he was going to need surgery. [*Id.* at 3–4]. That doctor stated he would get a different doctor to address Plaintiff's fall injuries. [*Id.* at 4]. When that other doctor came to see Plaintiff, he also said Plaintiff was only there for heart issues and should fill out a sick call form for his other injuries. [*Id.*]. Plaintiff stated that he had filled out multiple sick call forms for those injuries, but the doctor nevertheless left. [*Id.*].

On the evening of July 11, 2025, Plaintiff informed an officer who came to make rounds that he had repeatedly hit the emergency call button due to him having heart issues, but the button

did not work, and that an inmate in the cell next to him had hit his emergency call button, but officers kept turning off the alarm without coming to the pod. [*Id.*]. Medical staff then came to see Plaintiff and he was transported to a hospital in an ambulance. [*Id.*]. At the hospital, Plaintiff "was informed that [his] neck was broken in two (2) places, there was bleeding on the brain, [and] [he] had a fractured right cheek bone" and left arm nerve damage. [*Id.*]. Plaintiff was then transferred to a different hospital, where he stayed until July 13, 2025. [*Id.*].

Plaintiff also claims that when he arrived at TTCC in September 2025, unspecified prison officials refused to allow him to have the medication he brought from MCCX, and Plaintiff has been refused access to his medical files. [*Id.*].

In his complaint, Plaintiff states that he filed a grievance regarding the alleged denials of medical care to him, but the grievance chairperson did not process this grievance and returned it as inappropriate due to Plaintiff's failure to include dates and times. [*Id.* at 1–2]. Also, with his complaint, Plaintiff included grievance documents that establish Plaintiff filed a grievance on August 5, 2025, regarding the lack of response to his sick call requests regarding his fall injuries. [Doc. 2-1]. But "Cpl. S. Delk" returned this grievance to Plaintiff with notations indicating that he was unable to process it due to Plaintiff's failure to include "specific details, i.e. dates, times, names of persons involved." [*Id.* at 1, 3].

Plaintiff's only request for relief is that the Court hold Defendants "culpable[] [and] negligent" and find "that they acted with deliberate indifference." [Doc. 2 p. 5]. Plaintiff has sued the Tennessee Department of Correction, Warden Shawn Phillips, and Centurion Healthcare. [*Id.* at 1–2].

5

### C. Analysis

Initially, Plaintiff's § 1983 claim or claims appear to be largely time-barred, regardless of the Defendant against whom they are asserted. The most recent incident at MCCX was the evening of July 11, 2025, when Plaintiff alleges he told an officer on rounds that he was having chest pain and had been hitting the emergency call button to no avail. [Doc. 2 at 4]. He alleges that medical staff came to his unit and he was taken to the hospital that evening. [*Id.*]. While Plaintiff's complaints appear to be centered around the earlier inaction of officers / medical staff rather than his July 11th hospitalization, even this latest incident is more than a year prior to when he signed his Complaint on July 27, 2026. The only later allegation of deliberate indifference is that on September 11, 2025, he was refused medication when transferred from MCCX to TTCC. [*Id.*]. As the Court will explain, even if a § 1983 claim is timely as to that complaint, Plaintiff's allegations fail to state a claim.

### 1. Centurion Healthcare

Plaintiff's Complaint does not allow the Court to plausibly infer that Defendant Centurion may be liable under § 1983 for the incidents alleged in the Complaint. For the Complaint to state a plausible § 1983 claim against Defendant Centurion, it must include facts from which the Court can plausibly infer that this entity's custom or policy caused a violation of Plaintiff's constitutional rights. *See Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (a plaintiff seeking to hold a private entity liable under § 1983 must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights) (citation omitted). In other words, Plaintiff cannot hold Defendant Centurion liable "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Instead, Defendant Centurion may be liable under § 1983 only where "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* Such a claim may be based on the following:

(1) the existence of an illegal official policy or legislative enactment;
(2) an official with final decision making authority ratifying illegal actions;
(3) the existence of a policy of inadequate training or supervision; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

The only allegations of Plaintiff's Complaint that the Court can plausibly infer as against Defendant Centurion are that between June 28 and July 11, 2025, Plaintiff filed sick call forms requesting medical care on numerous occasions, but although Plaintiff received Tylenol several times and was charged at least once for a sick call visit, he did not see medical staff. These allegations are certainly troubling, but Plaintiff provides no facts to support a plausible inference that a custom or policy of Defendant Centurion, rather than the negligent acts of prison officials or Centurion employees, caused Plaintiff not to see medical staff.

Accordingly, Plaintiff does not "nudge[] [his claims] across the line from conceivable to plausible" as to Defendant Centurion, *Twombly*, 550 U.S. at 570, and claims against this Defendant are **DISMISSED**.[1]

---

[1] The Court also notes that Plaintiff's claims regarding the alleged denials of medical care appear to be time-barred, as the face of the complaint establishes that Plaintiff did not file his claims regarding the denials of medical care between June 28 and July 11, 2025, until more than a year later on July 27, 2026. [*Id.* at 2–5]. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (district courts apply state statutes of limitations § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(3) (providing that Tennessee applies a one-year statute of limitations to § 1983 actions).

It is also apparent from the face of the complaint that Plaintiff failed to properly exhaust his claims regarding the alleged denials of medical care to him. Specifically, the grievance documents demonstrate that a prison official did not process the Plaintiff's grievance about these

7

### 2. TDOC

Plaintiff has also sued the TDOC. However, the TDOC is not an entity subject to suit under § 1983. *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that the TDOC is not a "person" within meaning of 1983). Accordingly, claims against Defendant TDOC are **DISMISSED**.

### 3. Warden Phillips

To the extent Plaintiff sues Defendant Warden Phillips in his individual capacity, nothing in Plaintiff's complaint or grievance supports a plausible inference that Defendant Warden Phillips was personally involved in, authorized, approved, or acquiesced to any violation of Plaintiff's constitutional rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983); *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal

---

incidents because he did not include details that the TDOC grievance procedure required [Doc. 2-1]. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (providing that, to properly exhaust his claims, a prisoner must utilize every step of the prison's procedure and follow the "critical procedural rules" in a manner that allows prison officials to review and, where necessary, correct the issues set forth in the grievance "on the merits." (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010))). These claims are therefore also subject to dismissal on this ground. *Barnett v. Laurel Cnty.*, No. 16-5658, 2017 WL 3402075, at *1–2 (6th Cir. Jan. 30, 2017) (affirming dismissal of a complaint at screening for failure to exhaust where the complaint demonstrated the plaintiff had failed to pursue available administrative remedies (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007), and *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007))).

quotation marks and citations omitted). And Defendant Warden Phillips cannot be liable under §1983 based solely on his supervisory position. *Iqbal*, 556 U.S. at 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

To the extent that Plaintiff sues Defendant Warden Phillips in his official capacity, that claim is actually against the TDOC and/or the State of Tennessee. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But neither the TDOC nor the State of Tennessee is an entity subject to suit under § 1983. *Hix*, 196 F. App'x at 355; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (providing that "a State is not a person within the meaning of § 1983").

Accordingly, Plaintiff's claims against Defendant Warden Phillips are **DISMISSED**.

## III.   CONCLUSION

For the reasons set forth above:

1.   Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.   Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3.   The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4.   The Clerk is **DIRECTED** to provide a copy of this memorandum and order and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5.      Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983, and it is therefore **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

6.      The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.  AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

10